1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHELLE BUDWIG,                        No.  1:18-cv-01068-EPG

12              Plaintiff,                    ORDER DENYING MOTION FOR
                                             SUMMARY JUDGMENT
13         v.
                                             (ECF No. 30)
14   ALLEGIANT AIR, LLC,

15              Defendant.

16

17         Plaintiff Michelle Budwig ("Budwig") filed the complaint in Fresno County Superior

18   Court that commenced this action on May 5, 2017. (ECF No. 1-1 at 6). On August 9, 2018,

19   Defendant Allegiant Air, LLC ("Allegiant") removed the complaint to this court. (ECF No. 1).[1]

20   Budwig's complaint brings causes of actions against her employer Allegiant for violations of

21   California's Fair Employment and Housing Act ("FEHA") with respect to her disability. On

22   February 18, 2020, Allegiant moved for summary judgment on all claims. (ECF No. 30). Budwig

23   filed an opposition on April 6, 2020, and Allegiant filed a reply on April 20, 2020. (ECF Nos. 56,

24   58). For the reasons below, the Court denies Allegiant's motion for summary judgment.

25   ///

26   ///

27

28   _____

[1] The parties consented to having this case reviewed by a magistrate judge for all purposes. (ECF Nos. 9-11).

# I.     SUMMARY OF COMPLAINT

According to her complaint, Budwig became disabled on August 27, 2013 when her hands broke out in blisters due to a cleaning agent used in planes. She was placed on light duty for about one year. Thereafter, she was put on unpaid leave, was denied another position at Allegiant, and was not assisted with finding another position. She filed a Complaint of Discrimination with the California Department of Fair Employment and Housing in May 2015, and the department issued her a notice of a right to bring a civil action on May 6, 2016. (ECF No. 1-1 at 6-13).

The complaint lists four causes of action, each under different subsections of California Government Code § 12940: disability discrimination, failure to take all reasonable steps to prevent discrimination, failure to engage in the interactive process, and failure to provide a reasonable accommodation. (ECF No. 1-1 at 8-15).

# II.    RELEVANT FACTS IN RECORD

Except as otherwise noted, the following facts in the summary judgment record are undisputed:[2]

Allegiant hired Budwig as a flight attendant in 1999, and she became an Airport Transportation Supervisor in 2000 or 2001.[3] (ECF No. 58-2 ¶ 1). In August 2013, Budwig began suffering from a disability: when "Budwig touched parts of the airplane that were cleaned with the [new cleaning] product, her hands subsequently broke out with blisters. . . . Budwig has also suffered permanent nerve damage in her hands." (ECF No. 58-2 ¶ 2). "The injury to . . . Budwig's hands became permanent. . . . However, when . . . Budwig wears glo[v]es, her hands are protected from the cleaning product." (ECF No. 58-2 ¶ 3).

"Allegiant responded by offering Ms. Budwig a light-duty assignment at the Fresno airport." (ECF No. 58-1 ¶ 14). The assignment was "temporary" and "created specifically for her during the pendency of her workers' compensation claim," (ECF No. 58-1 ¶ 15), and the

---

[2] To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible.  Generally, it is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment.

[3] This role was in addition to her role as a flight attendant. (ECF No. 30-3 at 145 ¶ 9) (Allegiant's Adriana Ramirez averring that "[i]n addition to her Flight Attendant duties, Ms. Budwig also served as an Air Transportation Supervisor"); (*See also* ECF No. 56-3 at 17-18) ("Q. And [the Air Transportation Supervisor role] was in addition to your regular role as a flight attendant? A. [by Budwig] Yes.").

1    "position expired around September 30, 2014," (ECF No. 58-1 ¶ 19).

2        During that temporary assignment, "Allegiant announced it was redesigning its [Airport

3    Transportation Supervisor] program. As part of its redesign, Allegiant required every [Airport

4    Transportation Supervisor] to reapply for the role[.]" (ECF No. 58-1 ¶ 7). Budwig "missed the

5    mandatory deadline to reapply for the role" on October 16, 2014. (ECF No. 58-1 ¶ 8). At that

6    point, she "stopped serving as an [Airport Transportation Supervisor.]"

7        Thereafter, "Budwig was offered a workers' compensation leave of absence, and [she]

8    received benefits under that program." (ECF No. 58-1 ¶ 20). That program lasted "until at least

9    November 30, 2014." (ECF No. 58-1 ¶ 20; *accord* ECF No. 30-3 at 146).

10       On December 4, 2014, Allegiant's third-party administrator notified Allegiant that

11   Budwig could return to work, so long as she "wear[s] cotton[-]line[d], Nitrile gloves whenever

12   she goes back to work on the plane, just to keep away the cleaning agents directly." (ECF No. 58-

13   1 ¶ 23).

14       On December 16, 2014, Budwig spoke with Allegiant employees Michael Bonner and

15   Adriana Ramirez ("Bonner" and "Ramirez"), who told Plaintiff that Allegiant "was putting [her]

16   on leave without pay because [she] needed to wear gloves while working as a flight attendant."

17   (ECF No. 56-3 at 104 ¶ 8). Bonner and Ramirez informed Budwig that "Budwig could look for

18   other available positions that she was qualified for." (ECF No. 58-1 ¶ 28). According to Budwig,

19   Allegiant "could have had [her] work as a flight attendant while wearing gloves in December of

20   2014, but refused to do so." (ECF No. 56-3 at 107 ¶ 14).

21       Budwig asserts that Allegiant representatives told her that they "would help set up an

22   interview for me, [but] Mr. Bonner stated that defendant A[llegiant] would not help me get

23   [another] job [at Allegiant]." (ECF No. 56-3 at 104 ¶ 8). She also asserts that Bonner never told

24   her that Allegiant "planned to investigate the type of gloves I needed to wear or that defendant

25   A[llegiant] was going to engage in the interactive process to get me back to working as a Flight

26   Attendant." (*Id.*).[4]

27       According to Budwig, in follow-up email exchanges with her, Mr. Bonner never indicated

28   _____

[4] Allegiant disputes these assertions. (ECF No. 30-3 at 146 ¶ 24).

Allegiant intended to engage in the interactive process or research reasonable accommodations. In her Separate Statement of Additional Disputed Material Facts, Budwig summarized the email exchange as follows:

> In her 12/19/14 email, Michelle Budwig asked Michael Bonner: "just so we are on the same page and to help me decide on which job I would like, My only restriction was that I have to ware gloves right?" Michael Bonner responded in a 12/19/14 email: "You are correct on the restrictions. You must wear cotton gloves on or around an airplane. If you are not working on or around an airplane, it is not mandatory you wear the gloves, according to your doctor's report." Later on 12/31/14, Michelle Budwig sent an email asking "Could you please let me know how much this job pays? It did not have that kind of information. Also, since workmans comp is no longer paying me, will Allegiant put me back on payroll? And if so, how much would I get paid?" Mr. Bonner replied in a 12/31/14 email: "Please speak to your adjuster about getting paid and if you are eligible to be paid by WC. You are currently on a Leave of Absence pending your ability to qualify for another position in the company. If you do not obtain employment with Allegiant then you will have the ability to reach a settlement for your OJI with Gallagher Bassett."

(ECF No. 58-2 ¶ 6).

"On December 26, 2014, Ms. Budwig sent an email to Mr. Bonner indicating that she wanted the Advertising Administrator Position." (ECF No. 58-1 § 32). "However, after interviewing for the position, . . . Budwig was not offered or given the position. Later plaintiff Michelle Budwig learned that defendant Allegiant claimed that she was not offered the job, because she declined to accept it due to the lower pay." (ECF No. 58-2 ¶ 7). Budwig asserts she was willing to accept the lower pay. (ECF No. 56-3 at 105 ¶ 10) (Budwig averring that "I never made a statement that I did not want the job due to an alleged lower pay. I wanted the job"). In any event, Budwig did not receive the job, and Allegiant "offered the position to another candidate." (ECF No. 58-1 ¶ 36).

On January 29, 2015, Ramirez, one of the Allegiant employees who informed Budwig she was being placed on leave, ordered three pairs of gloves. (ECF No. 30-3 at 172-75) (order confirmation emails). Allegiant asserts that Ramirez "asked [Allegiant's Inflight team] to test the gloves [she] had purchased" as part of "the interactive process for Ms. Budwig." (ECF No. 30-3 at 146 ¶ 25). On February 17, 2015, Allegiant's counsel requested additional information from the Panel-Qualified Medical Evaluator, Michael Borok MD, about what gloves Budwig required.

4

1   (ECF No. 30-3 at 177) ("Your November 20, 2014 report provides a work restriction wherein

2   applicant should wear Cotton Lined Nitrile gloves when she goes back to work. The parties

3   would appreciate clarification on this issue. An internet search of Cotton Lined Nitril[e] gloves

4   showed several different styles. Please be more specific as to the particular glove you have in

5   mind.").

6           At some point after ordering the gloves, Allegiant's team tested the gloves on Allegiant's

7   plane. The testing was underway by February 25, 2015, when Ramirez reported that "[t]he In-

8   flight department tested the iPad with the gloves and no problem there, however they are

9   currently working on testing these gloves on the aircraft . . . ." (ECF No. 30-3 at 181). On March

10  24, 2015, Allegiant determined that "the sample gloves we were provided were a sanitary issue"

11  and thus "not a reasonable accommodation." (ECF No. 30-3 at 183). The parties do not dispute

12  that "[b]etween December 16, 2015 and June 1, 2015, defendant Allegiant did not ask to meet

13  with plaintiff Michelle Budwig to have her try on the gloves, never asked plaintiff Michelle

14  Budwig to try on the gloves, did not meet with [her] to try on the gloves, and never asked plaintiff

15  Michelle Budwig to be seen or observed performing any type of job functions wearing gloves."

16  (ECF No. 58-2 ¶ 12).

17          On May 8, 2015, Budwig filed a discrimination complaint with the California Department

18  of Fair Employment and Housing.

19          Allegiant received Dr. Borok's response on May 27, 2015. Dr. Borok clarified that

20  Budwig "should wear any nitrile powderless glove that does not contain parabens, lanolin,

21  fragrance or nickel and underneath these gloves, she can wear some fine plain white thin cotton

22  gloves." (ECF No. 30-3 at 191).

23          "On June 10, 2015, Allegiant offered Ms. Budwig a modified duty Flight Attendant

24  position, which differs from its general Flight Attendant position in one key respect: Ms. Budwig

25  is permitted to wear nitrile powderless gloves, and underneath wear thin white cotton gloves,

26  when going back to work on the plane." (ECF No. 58-1 ¶ 54). "Budwig accepted the position on

27  June 10, 2015," and she "continues to work as a full-time Flight Attendant with Allegiant[.]" (*Id.*

28  ¶¶ 55-56).  But Budwig is no longer an Airport Transportation Supervisor. (ECF No. 58-2 ¶ 10)

1    ("Allegiant did not give [Budwig] her position back as an Air[port] Transportation Supervisor.").

2    **III.    SUMMARY JUDGMENT STANDARD**

3            Summary judgment in favor of a party is appropriate when there "is no genuine dispute as

4    to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

5    56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine

6    dispute about material facts, summary judgment will not be granted."). "A party asserting that a

7    fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts

8    of materials in the record, including depositions, documents, electronically stored information,

9    affidavits or declarations, stipulations (including those made for purposes of the motion only),

10   admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do

11   not establish the absence or presence of a genuine dispute, or that an adverse party cannot

12   produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

13           A party moving for summary judgment "bears the initial responsibility of informing

14   the . . . court of the basis for its motion, and identifying those portions of 'the pleadings,

15   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16   any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

17   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party

18   moves for summary judgment on the basis that a material fact lacks any proof, the court must

19   determine "whether a fair-minded jury could reasonably find for the [non-moving party]."

20   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of

21   evidence in support of the plaintiff's position will be insufficient; there must be evidence on

22   which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof

23   concerning an essential element of the nonmoving party's case necessarily renders all other facts

24   immaterial." *Celotex*, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are

25   not enough to rebut a summary judgment motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

26   1989) (citation omitted).

27           In reviewing a summary judgment motion, the Court may consider other materials in the

28   record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen*

1   *v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

2         In judging the evidence at the summary judgment stage, the Court "must draw all

3   reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros*

4   *de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only

5   draw inferences, however, where there is "evidence in the record . . . from which a reasonable

6   inference . . . may be drawn"; the court need not entertain inferences that are unsupported by fact.

7   *Celotex*, 477 U.S. at 330 n.2. But "if direct evidence produced by the moving party conflicts with

8   direct evidence produced by the nonmoving party, the judge must assume the truth of the

9   evidence set forth by the nonmoving party with respect to that fact." *Leslie v. Grupo ICA*, 198

10   F.3d 1152, 1158 (9th Cir. 1999) (citation omitted).

11   **IV.   THE PARTIES' POSITIONS**

12         Allegiant argues that it is entitled to summary judgment on all four of Budwig's claims.

13   With respect to the first claim, disability discrimination, Allegiant argues it is not liable because

14   (a) Budwig was not qualified to work when Allegiant placed her on leave, (b) the leave was not

15   an adverse action because Allegiant was participating in the interactive process, (c) Allegiant had

16   no duty to reassign Budwig, and (d) Allegiant had a legitimate, non-discriminatory reason for

17   placing Budwig on leave. Allegiant argues it is not liable for the second claim, a failure to prevent

18   discrimination, because that claim is derivative of the disability discrimination claim. Third,

19   Allegiant argues it participated in the interactive process because it offered Budwig a reasonable

20   accommodation, albeit after some delay. Finally, it argues Budwig's failure to accommodate

21   claim fails because it accommodated Budwig and had no duty to reassign her.

22         Budwig opposes on all four claims. First, Budwig argues Allegiant is liable for disability

23   discrimination because placing her on leave was not a reasonable accommodation, given that she

24   could have worked with gloves on or in a different position. In addition, she argues pretext is

25   irrelevant because there is direct evidence of discrimination. Second, Budwig argues her failure-

26   to-prevent-discrimination claim succeeds for the same reasons her disability-discrimination claim

27   succeeds. Third, Budwig argues Allegiant failed to engage in the interactive process because (a) it

28   did not adequately investigate wearing gloves as a reasonable accommodation, (b) it did not

7

1    sufficiently engage with her during her leave, and (c) it put the onus on her to find a different

2    position. Finally, Budwig argues Allegiant failed to reasonably accommodate her because she

3    could have worked as a flight attendant with gloves six months before she was made a flight

4    attendant again. She also argues that Allegiant could have reassigned her instead of placing her on

5    leave.

6    **V.    LEGAL STANDARDS UNDER FEHA**

7          FEHA is a California law and the Court is hearing this case under its diversity jurisdiction.

8    Therefore, the Court will "apply state substantive law and federal procedural law." *Dep't of Fair*

9    *Employment & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 743 n.14 (9th Cir. 2011) (applying

10   California substantive law in FEHA case).

11         **A.    Failure to Engage in Interactive Process**

12         Under FEHA, an employer must "engage in a timely, good faith, interactive process with

13   the employee or applicant to determine effective reasonable accommodations, if any, in response

14   to a request for reasonable accommodation by an employee or applicant with a known physical or

15   mental disability or known medical condition." Cal. Gov't Code § 12940(n).

16         "The 'interactive process' required by the FEHA is an informal process with the employee

17   or the employee's representative, to attempt to identify a reasonable accommodation that will

18   enable the employee to perform the job effectively. Ritualized discussions are not necessarily

19   required." *Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1013 (2009) (citations omitted).

20         "Once the interactive process is initiated, the employer's obligation to engage in the

21   process in good faith is continuous." *Scotch*, 173 Cal. App. 4th at 1013. "Liability hinges on the

22   objective circumstances surrounding the parties' breakdown in communication, and responsibility

23   for the breakdown lies with the party who fails to participate in good faith." *Canupp v. Children's*

24   *Receiving Home of Sacramento*, 181 F. Supp. 3d 767, 780 (E.D. Cal. 2016) (quoting *Gelfo v.*

25   *Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 52 n.22 (2006)). Even if "an employer t[akes]

26   some steps to work with an employee to identify reasonable accommodations . . . [i]f the

27   employer is responsible for a later breakdown in the process, it may be held liable." *Nadaf-*

28   *Rahrov v. Neiman Marcus Group, Inc.*, 168 Cal. App. 4th 952, 985 (2008).

**B.** **Disability Discrimination**

      1.    <u>Prima Facie Case</u>

A prima facie case for disability discrimination under FEHA based on grounds of physical disability requires that the plaintiff: "(1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Sandell v. Taylor-Listug, Inc*., 188 Cal. App. 4th 297, 310 (2010); *accord Ravel v. Hewlett–Packard Enter., Inc*., 228 F. Supp.3d 1086, 1095 (E.D. Cal. 2017). Two aspects of the prima facie case warrant additional attention here: reasonable accommodations and adverse employment actions.

      *a)*    *Reasonable Accommodation*

With respect to unpaid leaves, an unpaid leave "may be a reasonable accommodation provided that the leave is likely to be effective in allowing the employee to return to work at the end of the leave, with or without further reasonable accommodation . . . ." 2 C.C.R. § 11068(c). But "[w]hen an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence." *Id.*

With respect to reassignment, an employer has "no duty to accommodate by way of reassignment to a different position if the restructuring of [an employee's] current job provided a reasonable accommodation." *Spitzer*, 80 Cal. App. 4th at 1386. In fact, if restructuring is a reasonable accommodation, an employee "ha[s] no right to further accommodation and [the employer] has no duty to facilitate reassignment." *Id.* at 1389 n.3 (noting that it is "inconsistent" to find an employer failed to reasonably accommodate by both failing to restructure *and* failing to facilitate reassignment).

However, if restructuring is not a reasonable accommodation, an employer must take affirmative actions once an employee requests reassignment:

> Numerous courts have assumed that the reassignment obligation means something more than treating a disabled employee like any other job applicant. The responsibility to reassign a disabled employee who cannot be otherwise accommodated does not require creating a new job, moving another employee,

1    promoting the disabled employee, or violating another employee's rights under a
2    collective bargaining agreement but it nevertheless does entail affirmative
     action. . . .

3
4    Under the FEHA (and the ADA) an employer is relieved of the duty to reassign a
     disabled employee whose limitations cannot be reasonably accommodated in his
5    or her current job only if reassignment would impose an undue hardship on its
     operations or if there is no vacant position for which the employee is qualified.

6
7    *Id.* at 1388-89 (alterations, footnote, citations, and internal quotation marks omitted).

8                       b)       *Adverse Employment Action*

9            "[A]n adverse employment action is one that that materially affects the terms, conditions,

10   or privileges of employment." *Whitehall v. Cty. of San Bernardino*, 17 Cal. App. 5th 352, 366–67

11   (2017) (citing *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1051 (2005)). An unpaid leave

12   "may be a reasonable accommodation provided that the leave is likely to be effective in allowing

13   the employee to return to work at the end of the leave, with or without further reasonable

14   accommodation . . . ." 2 C.C.R. § 11068(c). But "[w]hen an employee can work with a reasonable

15   accommodation other than a leave of absence, an employer may not require that the employee

16   take a leave of absence." *Id.*; *accord Ravel*, 228 F. Supp. 3d at 1096 ("Pursuant to this regulation,

17   an employer's decision to place an employee on leave when she is able to work with another

18   reasonable accommodation cannot be described as a lawful accommodation of a physical

19   disability." (internal quotation marks and citation omitted)).

20                   2.       Burden and Burden-Shifting

21           In disability discrimination cases, "[t]he prima facie burden is light; the evidence

22   necessary to sustain the burden is minimal." *Sandell*, 188 Cal. App. 4th at 310.

23           In some situations, an employer may shift the burden to the employee if it can provide a

24   non-discriminatory reason for the disparate treatment. "California has adopted the three-stage

25   burden-shifting test established by the United States Supreme Court for trying claims of

26   discrimination based on a theory of disparate treatment because such claims must usually be

27   proved circumstantially." *Lucent Techs., Inc.*, 642 F.3d at 745 (cleaned up). As noted in *Lucent*

28   *Technologies*, the framework is relevant when "there is no evidence that proves the fact of

10

1    discriminatory animus without inference or presumption." *Id.* at 745 n.22; *accord Wallace v. Cty.*

2    *of Stanislaus*, 245 Cal. App. 4th 109, 123 (2016) ("The three-stage framework and the many

3    principles adopted to guide its application do not apply in discrimination cases where, like here,

4    the plaintiff presents direct evidence of the employer's motivation for the adverse employment

5    action." (footnote omitted)).

6         But a plaintiff who proffers direct evidence of discrimination—evidence "which, if

7    believed, proves the fact of discriminatory animus without inference or presumption"—will

8    usually survive summary judgment on this point. *Fu v. Walker Parking Consultants*, 796 F. Supp.

9    2d 1148, 1154 (N.D. Cal. 2011) ("When a plaintiff offers direct evidence of an employer's

10   discriminatory motive, 'a triable issue as to the actual motivation of the employer is created even

11   if the evidence is not substantial.'" (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221

12   (9th Cir. 1998))).

13        **C.      Failure to Prevent Discrimination**

14        A failure-to-prevent claim is derivative of a disability-discrimination claim. Thus, the two

15   rise and fall together. *Glynn v. Sup. Court*, 42 Cal. App. 5th 47, 56, 254 Cal. Rptr. 3d 772, 780

16   (2019) ("Allergan concedes Glynn's causes of action for failure to prevent discrimination and

17   wrongful termination are derivative of Glynn's FEHA disability discrimination and retaliation

18   causes of action. We therefore conclude Allergan is not entitled to summary adjudication of these

19   claims for the same reasons it is not entitled to summary adjudication of Glynn's FEHA disability

20   and retaliation claims."); *Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998), *as*

21   *modified* (May 12, 1998) ("There's no logic that says an employee who has not been

22   discriminated against can sue an employer for not preventing discrimination that didn't happen,

23   for not having a policy to prevent discrimination when no discrimination occurred.  Employers

24   should not be held liable to employees for failure to take necessary steps to prevent such conduct,

25   except where the actions took place and were not prevented." (cleaned up)); *Featherstone v. S.*

26   *Cal. Permanente Med. Grp.*, 10 Cal. App. 5th 1150, 1166 (2017) ("On appeal, Featherstone does

27   not dispute that her failure to prevent claim is entirely derivative of her disability discrimination

28   claim. Because Featherstone cannot establish her underlying cause of action for disability

1   discrimination, she cannot maintain a derivative claim for violation of section 12940, subdivision

2   (k). Accordingly, the trial court properly granted judgment as a matter of law on Featherstone's

3   failure to prevent discrimination claim.").

4         **D.**      **Failure to Accommodate**

5         An employer violates FEHA if it "fail[s] to make reasonable accommodation for the

6   known physical or mental disability of an applicant or employee." Cal. Gov't Code § 12940(m).

7   "Employers must make reasonable accommodations to the disability of an individual unless the

8   employer can demonstrate that doing so would impose an 'undue hardship.'" *Spitzer v. Good*

9   *Guys, Inc*, 80 Cal. App. 4th 1376, 1383 (2000) (quoting 2 C.C.R. § 7293.9(a), renumbered to 2

10  C.C.R. § 11068(a))); *accord* 2 C.C.R. § 11068(a) ("An employer . . . has an affirmative duty to

11  make reasonable accommodation(s) for the disability of any individual applicant or employee if

12  the employer . . . knows of the disability, unless the employer . . . can demonstrate, after engaging

13  in the interactive process, that the accommodation would impose an undue hardship.").

14        Thus, an employer of a disabled employee can prevail on a reasonable accommodation

15  claim in only three circumstances:

16

17        (1) [a] reasonable accommodation was offered and refused; (2) there simply was
    no vacant position within the employer's organization for which the disabled

18        employee was qualified and which the disabled employee was capable of
    performing with or without accommodation; or (3) the employer did everything in

19        its power to find a reasonable accommodation, but the informal interactive
    process broke down because the employee failed to engage in discussions in good

20        faith.

21  *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000).

22  **VI.**    **DISCUSSION**

23        **A.**      **Failure to Engage in Interactive Process**

24        Because it is relevant to her other claims, the Court first addresses Budwig's claim that

25  Allegiant failed to engage in the interactive process.

26        Allegiant offers three main arguments for why it engaged in the interactive process.

27        First, Allegiant argues it participated in the interactive process because it offered Budwig

28  a reasonable accommodation by returning her to work as a flight attendant in June 2015.

According to Allegiant, "an employer cannot be liable for failing to engage in the interactive process when the employee was in fact offered a reasonable accommodation." (ECF No. 30-1 at 18).[5]

Allegiant cites to *Wilson v. County of Orange*, 169 Cal. App. 4th 1185 (2009) for this point. There, a jury found that an employer engaged in the interactive process despite placing the employee on unpaid leave for most of nine months. Throughout the process, the employer was actively working with the employee to find accommodations. *Id.* at 1189-92. Among those were the employer's human resources looking for and offering alternate positions to the plaintiff, providing temporary accommodations without a reduction in pay. Eventually, the plaintiff got the accommodation she wanted. Based on this, the court determined that "[t]he record amply supports the jury verdict," *id.* at 1195. Thus, *Wilson* does not hold that an employer can never be liable for failure to engage in the interactive process when the employee *eventually* gets their desired position. Rather, it affirmed a jury verdict that found, on the facts there, the employer had engaged in the interactive process.

Here, in contrast, construing all facts in favor of Plaintiff, a reasonable juror could find that Allegiant had not sufficiently engaged in the interactive process because Allegiant failed to act in a timely manner during the process. Allegiant learned of Budwig's disability in August 2013. It assigned her to a position that it knew was temporary and which ended on September 30, 2014. And the evidence presented to the Court shows that it began testing a pair of gloves only in February 2015.

Moreover, Allegiant offered Budwig the flight attendant position only after she filed a discrimination complaint with Department of Fair Employment and Housing. Allegiant, quoting *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 353 (2008), argues that this "temporal proximity alone is not sufficient to raise a triable issue," but *Arteaga* is not on point. It concerns the burden-

---

[5] Allegiant does not argue placing Budwig on leave was a reasonable accommodation. Nor could it for summary judgment purposes: a leave is impermissible when an employee could work with a reasonable accommodation. 2 C.C.R. § 11068(c). And Budwig has put forth evidence showing that she could have worked as a flight attendant with a reasonable accommodation—wearing gloves—when she was placed on leave. (ECF No. 56-3 at 107 ¶ 14) ("A[llegiant] could have had me work as a flight attendant while wearing gloves in December of 2014, but refused to do so.").

1    shifting framework that is not relevant here. The full sentence from which Plaintiff quoted is

2    illuminative: "But temporal proximity alone is not sufficient to raise a triable issue as to pretext

3    once the employer has offered evidence of a legitimate, nondiscriminatory reason for the

4    termination." *Id.* Moreover, the Court is not concluding whether the temporal proximity itself is

5    sufficient to deny summary judgment; rather, the Court finds that it is relevant evidence a jury

6    could consider.

7         Although Allegiant offers reasons why that timing was a coincidence, and it is not

8    dispositive of the matter, the fact that the accommodation was made only after Plaintiff made a

9    complaint is still relevant evidence for the jury to consider in determining whether Allegiant

10   "engage[d] in a *timely*, good faith, interactive process" with Budwig. *See* Cal. Gov't Code §

11   12940(n) (emphasis added).

12        Allegiant also points to interactions it had with Budwig before and after placing her on

13   leave. (ECF No. 30-1 at 19). While these discussions are relevant to the issue of Allegiant's good

14   faith and timeliness, they are not undisputed evidence establishing those elements. Budwig asserts

15   that when she was placed on leave, Allegiant did not discuss engaging in the interactive process

16   with her. Rather, Allegiant informed her she could look for jobs. Budwig asserts that "between

17   December 16, 2014 and June 15, 2015, no one [from Allegiant] reached out to [her] to discuss her

18   potential return to work." (ECF No. 58-2 ¶ 12). Allegiant includes additional communications

19   between December 16, 2014 and June 15, 2015. But very few of those included Budwig or her

20   representatives. Most were internal conversations among Allegiant employees. Thus, a reasonable

21   juror could conclude Allegiant did not truly engage in the *interactive* process.

22        Allegiant argues that the interactive process is informal and does not require specific

23   statements or ritualized discussions. Moreover, it also argues that it properly communicated with

24   Budwig's representative. While these arguments are relevant, they do not establish that Allegiant

25   is entitled to summary judgment in this claim.

26        Additionally, it is not clear that Allegiant did not fact properly communicate with

27   Budwig's "representative," as Allegiant claims.  *See also* (ECF No. 30-1 at 19) ("[I]t was her

28   doctor who waited three months to respond to Allegiant's request for additional clarifying

14

1   information."). Dr. Borok was the panel-qualified medical evaluator, not Budwig's representative.

2   *See* Cal. Lab. Code §§ 4060, 4062.2 (concerning appointment of qualified medical evaluators in

3   workers' compensation cases); *see also id.* § 4062.3(g) ("Ex parte communication with an agreed

4   medical evaluator or a qualified medical evaluator selected from a panel is prohibited."). Thus, it

5   appears for summary judgment purposes[6] that any delay from Dr. Borok cannot be attributed to

6   Budwig.

7          Therefore, the Court denies this aspect of Allegiant's motion.

8          **B.       Disability Discrimination**

9          Allegiant argues it is not liable for disability discrimination for four reasons.

10         First, it argues Budwig was not qualified to work when Allegiant placed her on leave. This

11  argument relates to the second element of a disability discrimination claim—that the plaintiff

12  "could perform the essential duties of the job with or without reasonable accommodations,"

13  *Sandell*, 188 Cal. App. 4th at 310.

14         But Plaintiff disputes this with evidence.  Construing all facts in favor of Plaintiff, a

15  reasonable jury could find that Budwig was qualified to work as a flight attendant when Allegiant

16  placed her on leave in December 2014. (ECF No. 58 at 5). Allegiant argues she was not qualified

17  then, but it has pointed to no evidence that her skin condition changed between December 2014

18  and June 2015. Instead, Allegiant seems to suggest that because Allegiant had not yet

19  independently confirmed that Budwig could perform the duties of her job with a reasonable

20  accommodation, she could not do so.  This misreads the law.  This element of disability

21  discrimination merely asks whether a Plaintiff could perform her job with or without reasonable

22  accommodations—not whether all parties were aware of it at the time.  Here, Allegiant has not

23  provided any evidence that Plaintiff could not perform the job with a reasonable accommodation.

24  Allegiant does not, for example, claim that her skin condition changed, or that the gloves she used

25  were not yet available. Instead, Allegiant's argument about its own knowledge goes to its defense

26  that it did not need to provide the reasonable accommodation while it was engaging in the

27  _____

28  [6] As this counterargument arose in Allegiant's reply, Budwig has not had an opportunity to contest this argument.
    This order does not preclude Allegiant from making this argument again at trial.

1   interactive process.  But a reasonable jury could conclude that Allegiant failed to engage in the

2   interactive process. *See supra.* Thus, for purposes of this element, Plaintiff has established that

3   she could perform the essential functions of her job with a reasonable accommodation in

4   December 2014.

5           Third, Allegiant argues that failing to reassign Budwig does not constitute discrimination

6   because the second prong—the ability to perform the essential job functions—conflates a

7   disability discrimination claim with a failure to accommodate claim. Allegiant cites to *Atkins v.*

8   *City of Los Angeles*, 8 Cal. App. 5th 696, 717 (2017), arguing the court there "reject[ed]

9   plaintiffs' argument that for purposes of their disability discrimination claim, the court needed

10  [to] assess whether they could perform the essential functions of the positions they sought for

11  reassignment because such argument conflated the legal standards for discrimination and failure

12  to accommodate[.]" (ECF No. 30-1 at 16). That case supports Allegiant's argument with respect

13  to reassignment because the ability to perform a reassigned job does not support a disability

14  discrimination claim:

15          [Plaintiffs] contend[ed] that the relevant question is whether they could perform
16          the essential functions of the positions to which they sought reassignment. The
            plaintiffs' argument improperly conflates the legal standards for their claim
17          under section 12940, subdivision (a), for discrimination, and their claim
            under section 12940, subdivision (m), for failure to make reasonable
18          accommodation, including reassignment. In connection with a discrimination
            claim under section 12940, subdivision (a), the court considers whether a plaintiff
19          could perform the essential functions of the job held—or for job applicants, the
            job desired—with or without reasonable accommodation.  The question whether
20          plaintiffs could perform the essential functions of a position to which they sought
            reassignment is relevant to a claim for failure to accommodate under section
21          12940, subdivision (m), and to a claim for failure to engage in the interactive
            process under section 12940, subdivision (o).
22

23  *Id.* at 717 (citations and paragraph break omitted).

24          Thus, Allegiant is correct that Budwig's ability to perform her job after a reassignment is

25  irrelevant to a disability discrimination claim. However, Budwig has survived summary judgment

26  for this element of disability discrimination on a different ground: she could have returned to her

27  duties as a flight attendant by wearing gloves.

28          Finally, Allegiant argues it had a legitimate, non-discriminatory reason for placing

                                                    16

1    Budwig on leave and that Budwig failed to show pretext. But that is not relevant here because

2    Budwig has provided direct evidence of disability discrimination. Her declaration states that

3    Bonner told her "A[llegiant] was putting me on leave without pay because I needed to wear

4    gloves while working as a flight attendant." (ECF No. 56-3 at 104 ¶ 8). That constitutes evidence

5    "which, if believed, proves the fact of discriminatory animus without inference or presumption",

6    *Fu*, 796 F. Supp. 2d at 1154.Thus, pretext is irrelevant here. *See Wallace*, 245 Cal. App. 4th at

7    123 ("The three-stage framework and the many principles adopted to guide its application do not

8    apply in discrimination cases where, like here, the plaintiff presents direct evidence of the

9    employer's motivation for the adverse employment action." (footnote omitted)).

10          Accordingly, Allegiant's motion for summary judgment as to this matter is denied because

11   a reasonable jury could conclude that Allegiant engaged in disability discrimination.[7]

12          **C.     Failure to Prevent Discrimination**

13          Allegiant argues it is not liable for the failure to prevent discrimination because it is

14   derivative of the disability discrimination claim. (ECF No. 30-1 at 17). However, the Court is

15   denying Allegiant's motion for summary judgment as to disability discrimination, so the Court

16   must correspondingly deny it for failure to prevent discrimination, too. *See Glynn*, 42 Cal. App.

17   5th at 56 (2019) ("Allergan concedes Glynn's causes of action for failure to prevent

18   discrimination and wrongful termination are derivative of Glynn's FEHA disability

19   discrimination and retaliation causes of action. We therefore conclude Allergan is not entitled to

20   summary adjudication of these claims for the same reasons it is not entitled to summary

21   adjudication of Glynn's FEHA disability and retaliation claims.").

22          **D.     Failure to Accommodate**

23          Allegiant argues that it provided Budwig with the exact accommodation she requested:

24   returning to the position of a flight attendant. It characterizes Budwig's complaint as merely an

25   issue of timing.  In support, Allegiant cites to *Hanson*, 74 Cal. App. 4th at 227, to argue that an

26   ───────────────

27   [7] In her statement of facts, Allegiant states that due to her "seniority in the company, she should have been given the [Airport Transportation Supervisor] position back." (ECF No. 56 at 8). However, in her argument she does not address this as an independent basis for denying Summary Judgment.  In light of Plaintiff's failure to make this argument, and the Court's denial of summary judgment on other grounds, the Court does not address this issue except

28   to note that nothing in this order precludes Budwig from raising this issue at trial.

"employer who provide[s a] plaintiff with [a] reasonable accommodation [is] not liable for failure to accommodate," (ECF No. 30-1 at 20). But *Hanson* is not on point. There, the employer did not take many additional months to provide an accommodation while the employee was on a forced leave. Rather, the issue was whether the employer had to provide different accommodations than the ones the employer provided. *Id.* But because the employer was "not obligated to choose the best accommodation or the accommodation the employee seeks," it was not liable. *Id.* at 228.

By contrast, here, Budwig's central argument is that the unpaid leave she was placed on was not a reasonable accommodation. *See* 2 C.C.R. § 11068(c) ("When an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence."). This distinguishes Budwig's case from *Hanson*.

Allegiant also argues that a delay during the interactive process does not make a failure to accommodate. It cites to *Taylor v. Phoenixville School District*, 184 F.3d 296, 316 (3d Cir. 1999), an Americans with Disabilities Act case where the Third Circuit stated "it would make little sense to insist that the employee must have arrived at the end of the interactive process before the employer has a duty to participate in that process." But as discussed supra, a reasonable juror could conclude that Allegiant failed to engage in the interactive process. Therefore, this argument fails. *See also* 2 Ams. with Disabs.: Pract. & Compliance Manual § 7:166 ("An employer is not required to move with maximum speed to complete the interactive process for providing reasonable accommodation. An employer is entitled to move at whatever pace it chooses as long as the ultimate problem—the employee's performance of her duties—is not truly imminent. However, an employer's unreasonable delay in providing reasonable accommodation to a disabled employee may constitute a failure to provide such accommodation. The acceptable timetable for an employer's providing a requested accommodation varies depending on the nature of the request and the circumstances of each case." (footnotes omitted)).

In a similar vein, Allegiant also contends that any delays were caused by Budwig's representatives—presumably referring to Dr. Borok. (*See* ECF No. 58 at 11) ("Ms. Budwig does not offer any evidence demonstrating that Allegiant delayed in evaluating her requested accommodation (and in fact, the undisputed evidence reveals that any delay in returning Ms.

1  Budwig to work stemmed from the unresponsiveness and delay of Ms. Budwig's

2  representatives)."). But Dr. Borok, as discussed above, does not appear to be Budwig's doctor.

3  Moreover, as also discussed *supra*, a reasonable jury could have determined that Allegiant failed

4  to accommodate before requesting information from Dr. Borok. Hence, this argument fares no

5  better.

6      Therefore, Allegiant's motion for summary judgment with respect to Budwig's failure to

7  accommodate claim fails.

8  **VII.    ORDER**

9      For the foregoing reasons, the Court HEREBY DENIES Allegiant's motion for summary

10  judgment (ECF No. 30).

11

12  IT IS SO ORDERED.

13      Dated:   **September 2, 2020**        /s/ *Erica P. Grosjean*

14                                        UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28